## 19972

Mary Elizabeth L. Thompson LOWE, Appellant, v. James E. CLAYTON et al., Respondents

(212 S. E. (2d) 582)

*Messrs. Moore, Swofford & Turnipseed,* of Spartanburg, *for Appellant,*

*Messrs. Odom, Nolen, Terry & Abernathy,* of Spartanburg, *for Respondents,*

March 11, 1975.

LEWIS, Justice:

The appellant, natural mother of the minor respondent, Lisa Ann Clayton, seeks in this action to set aside a previous decree of the Family Court of Spartanburg County, under which the respondents, Linda L. and James E. Clayton, the half sister and brother-in-law, respectively, of appellant, were allowed to adopt the minor respondent. The appeal is from an order of the Family Court granting, pursuant to Circuit Court Rule 44, respondent's motion for summary judgment upon the ground, as alleged in the fourth defense of the answer, that the present action was barred, under the doctrine of *res judicata* or estoppel, by a prior judgment or order of the court denying appellant visitation rights with the child.

The record shows that appellant was granted a divorce from her first husband, James F. Thompson, in 1968, and also custody of their child, the minor respondent, born August 10, 1965. As a result of a petition filed by respondents, Linda L. and James E. Clayton (hereafter designated respondents), the Family Court of Spartanburg County issued a decree on March 10, 1971 granting to them the adoption of the minor respondent (minor), then about five (5) years of age. Appellant and the natural father consented to the adoption.

Thereafter, appellant married her present husband and, subsequently, petitioned the court, in January 1973, for visitation rights with the minor. This petition was denied by an order of the court dated June 11, 1973 and a rehearing thereof was denied on November 1, 1973. The present action was instituted in February 1974 to set aside the adoption decree.

Appellant alleged, as grounds for vacating and setting aside the adoption decree, that the adoption, and her consent thereto, was obtained as a result of the fraud, deceit, and misrepresentations of respondents to her that the adoption was one of convenience, was temporary and that she would always be allowed to see and visit her daughter as her mother; and that the guardian *ad litem* had failed to adequately represent the minor in the adoption action. Pertinent here, the complaint alleged:

"4. That on or about August, 1970, the petitioner was living in Spartanburg, South Carolina, with her daughter, the Minor-Respondent herein, and was in extremely poor health; such that she was unable to care, provide for and support her daughter or herself; that although, the petitioner was divorced from the said James Frederick Thompson, she was only receiving nominal support from him.

"5. That at that time, the petitioner sought the aid of her sister, the Respondent, Linda L. Clayton, to help care for her minor daughter until such time as she was over her illness and able to financially and physically care for her daughter once again; that thereafter, the Respondents, James E. Clayton and Linda L. Clayton, informed the petitioner that they would agree to care for the said minor daughter only if the petitioner would agree to allow them to adopt the said minor.

"6. Thereupon, the petitioner stated that she would not entertain such a proposal in that she could not bear to give up her daughter; whereupon her sister and brother-in-law, the Respondents herein, assured the petitioner that it would

only be an adoption for convenience; that it would always remain in the family; that it would only be a temporary thing; that she would always be allowed to see and take her daughter places; that she would always be the real mother to her daughter, and that they would make sure that the said minor, Lisa Ann, always referred to her as her mother.

"7. That the petitioner, relying on the above representations and assurances of the said Respondents, entrusted her daughter to their care, and did not object to the said Respondents initiating adoption proceedings.

"8. That on October, 1970, the petitioner was served with a Petition for adoption of the said Respondent, Lisa Ann; that petitioner was misled by the Petition and by the subsequent assurances of the said Respondents, James E. Clayton and Linda L. Clayton, that her visitation rights and other promises of the said Respondents would be complied with in the adoption proceeding.

\* \* \*

"10. That in November, 1970, the petitioner was informed by the Respondents that a hearing was to be held on the adoption in the near future and that it was not necessary for her to be present, and due to her ill health, it would probably be better if she was not present, and for her not to worry that they would take care of everything; that as a result of such, the petitioner did not attend said hearing.

"11. That after the said hearing, the petitioner was visited on several occasions by the Respondents and by their attorney in an effort to obtain her signature consenting to a final decree of adoption; that the petitioner refused to sign said decree because there was no provision protecting her visitation rights with her minor child; that after many assurances and representations by the Respondents, that the only reason such was not provided for in the decree was that the Laws of the State of South Carolina prohibited such but that her rights to the child would always be protected by them, the petitioner signed her consent."

The complaint contained further allegations that, after appellant signed the adoption decree, respondents denied her the right to see her child, and that due to her poor health and financial condition she was unable to seek legal assistance until recently.

The fourth defense of the answer, upon which the lower court granted summary judgment, incorporates the files of the Family Court, which contain the adoption proceedings, and the pleadings and the testimony in the subsequent action in which appellant sought visitation rights with her child. The proceedings and order denying visitation rights form the basis for respondents' contention, sustained by the lower court, that appellant is "precluded by the doctrine of *res judicata* and/or estoppel" from bringing the present action to set aside the adoption decree.

The sole question to be decided is whether the prior unsuccessful action of appellant for visitation rights with her child now precludes, on the ground of *res judicata* or estoppel, the maintenance of the present action to set aside the adoption decree on the ground of fraud.

We have held that a final decree of adoption may be vacated or set aside because of fraud in the procurement of the judgment. *Wold v. Funderburg,* 250 S. C. 205, 157 S. E. (2d) 180.

The plea of *res judicata* and estoppel brings into play what is sometimes referred to as the dual aspects of the doctrine of *res judicata*. As pointed out in 46 Am. Jur. (2d), Judgments, Section 396, "there is a wide difference between the effect of a judgment as a bar to the prosecution of a second action upon the same claim, demand, or cause of action, and its effect to preclude the relitigation of particular facts or issues in another action between the same parties on a different claim or cause of action. Although there is virtual unanimity of agreement on this distinction, confusion frequently arises from variations in nomenclature applied thereto. The two aspects of the doctrine do not

necessarily have the same consequences, the effect of a judgment upon a subsequent controversy between the parties being more limited where the controversy is based upon a different cause of action than where it is based upon the original cause of action."

Both aspects of *res judicata* involve the theory of estoppel and it is said that the more recent tendency is to describe the rule precluding the relitigation of particular issues in a subsequent action on a different cause of action as "collateral estoppel by judgment" as distinguished from the "direct estoppel by judgment" where the prior and subsequent causes of action are identical. 46 Am. Jur. (2d), Judgments, Section 397.

Regardless of the nomenclature used, our decisions recognize this dual aspect of the doctrine of *res judicata.*

In *Wold v. Funderburg, supra,* we restated the long established general rule that, in order to sustain the plea of *res judicata* the following three basic elements must be established: (1) identity of parties; (2) identity of the subject matter; and (3) an adjudication of the issue in the former suit.

The dual aspect of the doctrine derives largely from the application of the foregoing third element. The rule as to the conclusiveness of the prior adjudication has a different application where the prior and subsequent causes of action are identical and where the subsequent action is on a different cause of action. This distinction was pointed out in *Johnston-Crews Co. v. Folk,* 118 S. C. 470, 111 S. E. 15.

The Court held in *Johnston-Crews* that, where the two actions are between the same parties on identical causes of action, the former adjudication is conclusive, not only the precise issues raised and determined, but of such as might have been raised affecting the main issue. Where, however, the two actions are between the same parties upon different causes of action, a different effect is

given the prior judgment. In the latter instance, the former judgment is conclusive only as to those issues *actually determined*.

Johnston-Crews succinctly states the foregoing principles as follows:

"In a subsequent suit between the same parties on the same claim, a judgment in the former suit is conclusive as to every matter that might have been determined; but, where the second suit is upon a different claim, the former judgment is conclusive only as to those issues actually determined."

In *Griggs v. Griggs,* 214 S. C. 177, 51 S. E. (2d) 622, the Court quoted extensively from American Jurisprudence, including the following now found in 46 Am. Jur. (2d), Judgments, Section 418:

"The rule granting conclusiveness to a judgment in regard to issues of fact which could properly have been determined in the action is limited to cases involving the same cause of action. Where a second action is upon a different claim, demand, or cause of action, the established rule is that the judgment in the first action operates as an estoppel only as to the [issues,] points or question actually litigated and determined, and not as to matters not litigated in the former action, even though such matters might properly have been determined therein."

In other words, the rule precluding relitigation of issues which might have been raised in the prior action applies only where the two actions involve the same cause of action; but all questions which were actually litigated in the prior action and determined by the judgment are conclusive in any subsequent action between the parties, or their privies, regardless of whether the subsequent action involves the same or a different cause of action.

The prior action between the parties involved only the right of appellant to visitation rights with the child; while

the present action seeks to set aside the adoption decree on the ground of fraud. The two actions were not based upon the same cause of action and, if the present action is barred, it must be upon the ground that the identical issue now presented was determined in the prior action. The lower court recognized that the two actions involved different causes of action and the respondent, in effect, so concedes in this appeal. The question then is whether the precise issue, now presented in this action, was determined in the prior action. If it was, appellant is estopped to maintain the present action; if not, this action can be maintained and summary judgment should not have been granted.

The petition in the prior action was very brief. It only alleged that in October 1970 an action was commenced by respondents against appellant and her former husband seeking the adoption of appellant's minor child and that appellant had great affection for her child. The relief sought was visitation rights with the child. The answer in that action was also brief. It admitted that the adoption action had been previously instituted, and alleged that it would not be in the best interest of the child for visitation privileges to be granted to appellant.

A hearing was held by the court to determine whether appellant should be granted the right to visit with the child, at which testimony was taken. The record showed that a decree had been entered under which respondents adopted the infant and the testimony of appellant related to an alleged agreement between her and respondents whereby she was assured that she would retain the right to visit with the child as a condition to her consenting to the adoption. Appellant's testimony followed very closely the factual allegations of her petition in this action. Respondents denied that any such agreement for visitation had been entered into by them.

After foregoing evidentiary hearing, the lower court entered an order in which the contentions of the appellant and the court's basic decision were stated as follows:

"The natural mother (appellant here) contends:

"(1) That she consented to the adoption with the understanding that she could visit the child; and

"(2) That she is not permitted to see Lisa Ann Clayton (the infant involved) outside the presence of the adoptive parents.

"The court is of the opinion that Section 10-2587.13 of the South Carolina Code disposes of the petition. This section makes it clear that upon final adoption the adoptive parents have all the rights and obligations which the natural parent previously had, and the rights and obligations of the natural parent are terminated."

After holding that the adoption decree, pursuant to the provisions of Code Section 10-2587.13, conclusively barred, as a matter of law, any rights to visitation on the part of appellant, the court stated in its order that "it is not amiss" to point out other matters. The order then stated that the testimony of the attorney who represented respondents in the adoption proceeding made it clear "that adoption proceedings were not contingent upon any vested visitation rights remaining in or with the natural mother." It was also stated that the allowance of visitation rights to the natural mother would be against the best interest of the child.

But for the consent of appellant, the natural mother, ▆▆ the adoption decree would not have been entered. Therefore, if the mother's consent was obtained through the fraud and misrepresentations of the adoptive parents, the decree should be set aside. Certainly, the issue of whether the adoption decree resulted from the misrepresentations of the adoptive parents was not put in issue by the pleadings. The only issue presented by the pleadings was whether the appellant, under the alleged agreement with the

adoptive parents, was entitled to visitation privileges with the child, irrespective of the adoption decree. The court properly held that an adoption decree foreclosed the enforcement of any such agreement.

The lower court held that the provisions of Code Section 10-2587.13 "Disposes of the petition" in the prior action seeking visitation privileges. That was the basis of the determination in that action and it forms no basis for the plea of *res judicata* or estoppel in this action which involves the validity of the adoption decree against the charge of fraud.

It is argued, however, that the court also determined, in the prior action, that the consent of appellant to the adoption decree was not obtained through any agreement as to visitation with her child, and that having so found appellant is estopped to relitigate the issue in this action. This is based, we assume, upon the statement in the adoption decree that the testimony of counsel who represented respondents in the adoption proceedings made it clear that the adoption decree was not contingent upon any vested visitation rights in the natural mother. There is no merit in this contention.

The order denying visitation rights was, under the clear language of the court, based upon the conclusive effect of Section 10-2587.13. It is true that the court thought it "not amiss" to state that the testimony of counsel made it clear that the adoption decree was not "contingent upon any vested visitation rights". However, this was not stated as an alternate basis for the judgment; but such statement, if it can *perhaps* be construed to constitute a holding that the consent of appellant was not procured through fraud, was a gratuitous finding by the court, unnecessary to the decision which had already been made and was not a basis for the judgment. It, therefore, could not form the basis of an estoppel.

A statement or finding in a case is not considered an adjudication unless it is clearly shown to have been a basis for the judgment. The applicable principles

are thus stated in 46 Am. Jur. (2d), Judgments, Section 426:

"Although the conclusive effect of a judgment is ordinarily regarded as extending to those issues common to both actions which were expressly adjudicated in the first action, the doctrine of collateral estoppel does not necessarily extend to every finding of the court in the prior action, or to every question passed upon by the court in its opinion accompanying the judgment. A fact found in a case becomes adjudicated only when it is shown to have been a basis of the relief, denial or relief, or other ultimate right established by the judgment; the reasoning and opinion of the court upon a subject, on the evidence before it, do not have the force and effect of the thing adjudged, unless the subject matter is definitely disposed of by the judgment of the court."

The lower court was in error in granting summary judgment. The judgment is accordingly reversed and the cause remanded for further proceedings.

Moss, C. J., and BUSSEY, LITTLEJOHN and NESS, JJ., concur.