529 S.E.2d 714

**Misty Dawn HAGY, f/k/a Misty Dawn Pruitt, and Guy Stanley Hagy, Plaintiffs,**

**Of whom Misty Dawn Hagy, f/k/a Misty Dawn Pruitt is, Petitioner,**

**v.**

**Donald Jerome PRUITT, Ann Lyle Pruitt and Elizabeth Dawn Pruitt, Defendants,**

**Of whom Donald Jerome Pruitt and Ann Lyle Pruitt are, Respondents.**

**In re Elizabeth Dawn Pruitt, a minor under the age of four years.**

**No. 25091.**

Supreme Court of South Carolina.

Heard Feb. 15, 2000.

Decided March 20, 2000.

426

Ian D. Maguire, of Suggs & Kelly, of Myrtle Beach, for petitioner.

John P. Bacot, Jr., of Surfside Beach, for respondents.

O. Terry Beverly, of Conway, guardian ad litem for Elizabeth Dawn Pruitt.

MOORE, Justice:

Petitioner (Misty) and her former husband, Stan Hagy, commenced this action to set aside the 1992 adoption of their daughter by Misty's father and stepmother, respondents Don and Ann Pruitt. The family court overturned the adoption. The Court of Appeals reversed. *Hagy v. Pruitt*, 331 S.C. 213, 500 S.E.2d 168 (Ct.App.1998). We affirm the Court of Appeals' decision as modified herein.

## FACTS

Elizabeth was born on August 25, 1991, two days after Misty turned sixteen. Misty and Stan, the baby's eighteen-year-old father, were not married but they were living with the Pruitts at the time of Elizabeth's birth. On December 6, 1991, Misty and Stan signed adoption consent forms allowing the Pruitts to adopt Elizabeth. The forms were filed December 12. The next day, Don Pruitt gave his written consent to allow Misty to marry Stan.[1]

A final adoption decree was issued June 18, 1992. Misty and Stan remained in the Pruitts' home, however, and cared for Elizabeth as before. The baby's surname remained "Hagy." In October 1992, Misty and Stan married. Their living arrangement with the Pruitts did not change until Stan moved out alone in October 1993.[2]

In August 1994, Misty took Elizabeth with her to stay at her mother's home in Virginia without the knowledge or consent of the Pruitts. A warrant was issued for Misty's arrest on federal kidnapping charges and she returned with the child to South Carolina in December 1994. She and Stan filed this action on December 12, 1994, to set aside the adoption.

Misty and Stan contended they were induced to give their consent by the Pruitts' fraudulent statements that the adoption would not be permanent. The Pruitts defended on the merits and also asserted the action was time-barred under

---

1. A female who resides with a parent and is between the ages of fourteen to eighteen must have parental consent to marry a male between the ages of sixteen to eighteen. S.C.Code Ann. § 20–1–250 (1985).

2. Misty and Stan were divorced a year later.

S.C.Code Ann. § 20–7–1800 (Supp.1998) which at the time provided: "No final decree of adoption is subject to collateral attack for any reason after a period of one year following its issuance."[3]

The family court concluded the time-bar did not apply to actions to set aside an adoption for fraud. On the merits, it found Misty's consent (but not Stan's) was procured by Don Pruitt's misrepresentations regarding the permanency of the adoption. The family court concluded that absent a valid consent, there was no jurisdiction to issue the adoption decree. Accordingly, it restored Misty's parental rights.[4]

On appeal, a majority of the Court of Appeals reversed finding § 20–7–1800 barred the action because it was commenced more than a year after the final adoption decree was entered. In a concurring opinion, Judge Howard found § 20–7–1800 did not bar an action to set aside an adoption decree based on extrinsic fraud. He found extrinsic fraud was not proved in this case, however, and agreed the family court's order should be reversed.

## ISSUES

1.  Can a statute of limitation bar an action to set aside a judgment on the ground of extrinsic fraud?

2.  Was extrinsic fraud proved in this case?

---

3.  This section was rewritten after the litigation in this case and now provides:

    (B) A party to adoption proceeding may appeal a final order, judgment, or decree of adoption in the manner provided for appeals from the court in other family court matters. In addition, this section may not be construed to preclude a court's inherent authority to grant collateral relief from a judgment on the ground of extrinsic fraud. For purposes of this subsection, "extrinsic fraud" is fraud that induces a person not to present a case or deprives a person of the opportunity to be heard. However, a court is under no obligation to grant a person relief from a judgment based upon extrinsic fraud if the person might have prevented the judgment by the exercise of proper diligence.

4.  To the contrary, Elizabeth's guardian ad litem recommended the adoption be upheld.

## DISCUSSION

### 1.  § 20–7–1800

■ The family court relied on *Wold v. Funderburg,* 250 S.C. 205, 157 S.E.2d 180 (1967), and *Lowe v. Clayton,* 264 S.C. 75, 212 S.E.2d 582 (1975), to find inapplicable the one-year limitation for collateral attack on an adoption decree provided by § 20–7–1800. The Court of Appeals' majority found these cases were not controlling because they were decided prior to the enactment of § 20–7–1800 and concluded § 20–7–1800 barred this action. Judge Howard disagreed. He found such an application of § 20–7–1800 would be an unconstitutional restriction of the court's inherent power to consider a collateral attack based on extrinsic fraud.

*Wold* and *Lowe* themselves do not stand for the proposition that an action to set aside an adoption decree for extrinsic fraud is *not* subject to an applicable statute of limitation. These cases simply hold that a final decree of adoption may be collaterally attacked on the ground of extrinsic fraud. *Wold,* 250 S.C. at 210, 157 S.E.2d at 183; *Lowe,* 264 S.C. at 81, 212 S.E.2d at 584 (*citing Wold* ).

In *Center v. Center,* 269 S.C. 367, 237 S.E.2d 491 (1977), we found an action to set aside a judgment procured by fraud was not barred by the one-year time limit found in § 15–27–130 reasoning that the statute by its terms applied only to relief from judgment on grounds of "mistake, inadvertence, or excusable neglect." Since fraud was not enumerated in the statute of limitation, the statute did not apply. *Id.* at 370, 237 S.E.2d at 493; *see also South Carolina Dept. of Soc. Servs. v. Durham,* 274 S.C. 222, 262 S.E.2d 49 (1980). Unlike § 15–27–130, however, the statute of limitation in this case purports to bar *all* actions to set aside the judgment. We must therefore determine the novel issue [5] whether a facially applicable statute of limitation will bar an action to set aside a judgment procured by extrinsic fraud.[6]

---

**5.** In *Yarbrough v. Collins,* 301 S.C. 339, 391 S.E.2d 873 (1990), the Court of Appeals applied a statute of limitation to an action to set aside a judgment for extrinsic fraud but did not address any challenge to the statute.

**6.** Most cases discussing this issue involve Rule 60(b) of the rules of civil procedure which are generally modeled on the Federal Rules of Civil

Judge Howard's concurrence in this case maintains that a statute of limitation cannot be constitutionally construed to limit a court's inherent authority to set aside a judgment for extrinsic fraud. We agree. The legislature cannot restrict the judicial branch's exercise of its inherent authority, *Williams v. Bordon's, Inc.*, 274 S.C. 275, 262 S.E.2d 881 (1980), which includes the inherent authority to set aside a judgment on the ground of extrinsic fraud. *See Center v. Center, supra.* Accordingly, we hold § 20–7–1800 does not bar an action to set aside an adoption on the ground of extrinsic fraud.[7]

## 2. Extrinsic fraud

A judgment may be set aside on the ground of fraud only if the fraud is "extrinsic" and not "intrinsic." *Corley v. Centennial Const. Co.*, 247 S.C. 179, 146 S.E.2d 609 (1966). Extrinsic fraud is collateral or external to the trial of the matter. *Mr. G. v. Mrs. G.*, 320 S.C. 305, 465 S.E.2d 101 (Ct.App.1995). It is "fraud that induces a person not to present a case or deprives a person of the opportunity to be heard." *Hilton Head Center of South Carolina, Inc. v. Public Service Comm'n*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987). Intrinsic fraud, on the other hand, is fraud presented and

---

Procedure. Rule 60(b)(3) allows one year for a motion for relief from judgment on the ground of fraud by an adverse party but the residual clause of the rule provides: "This rule does not limit the power of a court to entertain an independent action ... to set aside a judgment for fraud upon the court." Courts generally, including our Court of Appeals, have construed this clause to allow an action to set aside a judgment for extrinsic fraud outside the one-year time limit. *See Evans v. Gunter,* 294 S.C. 525, 366 S.E.2d 44 (Ct.App.1988); *Salway v. Arkava,* 215 Mont. 135, 695 P.2d 1302 (1985) (residual clause of Rule 60(b) recognizes the inherent power of a court of equity to set aside its judgments). Rule 60(b), SCRCP, however, does not resolve the issue in this case. Under Rule 81, SCRCP, a rule applies to family court only to the extent it is not inconsistent with the statutes and rules governing that court. Section 20–7–1800, which governs family court procedure, prohibits a collateral attack "for any reason" and prevails over Rule 60(b) here.

7. Our conclusion accords with the current version of § 20–7–1800. *See* footnote 3, *supra.* Although not an issue in this case, the doctrine of laches will apply in determining whether such an action is barred. *See, e.g., In re Paternity of Tompkins,* 518 N.E.2d 500 (Ct.App.Ind.1988); *Pierre v. Edmonds,* 645 P.2d 615 (Utah 1982).

considered in the trial. *Evans v. Gunter*, 366 S.E.2d 44, 294 S.C. 525 (Ct.App.1988). For example, perjury is intrinsic fraud and will not support an action to set aside the judgment. *Rycroft v. Tanguay*, 279 S.C. 76, 302 S.E.2d 327 (1983).

■ In this case, Misty's consent was required for the family court to order the adoption of her child. S.C.Code Ann. §§ 20–7–1690(A)(3) and –1760(B)(2) (Supp.1999). A mother who signs a consent to adoption waives her right to notice or appearance at the proceeding. S.C.Code Ann. § 20–7–1700(A)(9) (Supp.1999). Thus, if a mother's consent is fraudulently obtained, such fraud essentially acts to induce the mother not to present a case. Accordingly, we find the allegation Misty's consent was fraudulently obtained sufficiently alleges extrinsic fraud. *See Lowe v. Clayton, supra.*

■ Since the allegation of extrinsic fraud avoids application of the one-year time-bar under § 20–7–1800, the question then becomes whether such fraud has been proved by clear and convincing evidence to support setting aside the adoption decree.[8] This Court's scope of review extends to our own view of the preponderance of the evidence in this case. *Doe v. Clark*, 318 S.C. 274, 457 S.E.2d 336 (1995). The record indicates the following facts on the issue of fraud.

■ The consent forms signed by Misty and Stan include the following language: "I realize that this consent/relinquishment forfeits all my rights and obligations with respect to the named adoptee.... I know that the entry of the final decree of adoption renders any consent/relinquishment irrevocable." Further, each form states: "I execute this consent freely and voluntarily without duress of any nature or description.... I understand that this consent or relinquishment must not be given if psychological advice, legal advice, guidance or counseling is needed or desired." The contents of this consent form are mandated by § 20–7–1700.

---

8. The general rule is that fraud must be proved by clear and convincing evidence. *First State Savings & Loan v. Phelps*, 299 S.C. 441, 385 S.E.2d 821 (1989). Other courts have applied this standard of proof to set aside a judgment on the ground of fraud. *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047 (8th Cir.1991); *Godin v. Godin*, 725 A.2d 904 (Vt.1998).

Misty testified she and Stan accompanied the Pruitts to the Pruitts' attorney's office where Attorney Mark Chandler went over the consent form with them page by page. Chandler subsequently realized the consent form needed to be signed in the presence of an independent attorney. *See* S.C.Code Ann. § 20–7–1705(A) (Supp.1999). Misty and Stan then went to Attorney Ann James's office to sign the consent forms. Both attorneys testified they explained to Misty and Stan that their parental rights would be terminated and their consent was irrevocable once the adoption was final.

Misty admitted she understood the consent form meant the adoption would be final and she would have no further parental rights but she didn't believe the document would be controlling because her father had promised her that "Elizabeth would always be mine." Misty also testified that when she and Stan expressed reservations about the adoption, Don threatened to make them pay back a thousand dollars for the retainer fee for Mark Chandler.

Don Pruitt testified he told Misty and Stan "they could live with us and come to visit and see her anytime they wanted to, but we would have control of the baby." He denied telling Misty the adoption was not permanent and denied promising anything or threatening them. He admitted he did not want Misty and Stan to marry until after the adoption was final so that he could continue receiving a dependent's disability check for Misty until he began receiving one for Elizabeth.

The family court found the two attorneys who separately advised Misty and Stan regarding the legal significance of the consent forms did not inquire beyond the scope of the statutory guidelines. He concluded that a guardian ad litem should have been appointed for Misty because of her age. Finally, he concluded Misty's consent was fraudulently obtained by Don Pruitt's representations that this was an adoption for convenience only and that Misty's and Stan's parental rights would not be abridged.

█ We find the evidence Misty's consent was obtained by fraud is not clear and convincing in light of the fact she signed the consent form after being sufficiently advised by two attorneys that the adoption was irrevocable and that her parental rights would be terminated. By statute, Misty's

consent is not revocable on the ground she is a minor, S.C.Code Ann. § 20-7-1690(E) (Supp.1999), and, contrary to the family court's ruling, there is no applicable requirement that a guardian ad litem be appointed.[9] Since Misty failed to prove extrinsic fraud by clear and convincing evidence, the family court erred in overturning the adoption. The Court of Appeals' decision reversing the family court order is

**AFFIRMED AS MODIFIED.**

TOAL, Acting C.J., WALLER, BURNETT, JJ., and Acting Associate Justice GEORGE T. GREGORY, Jr., concur.

---

9. The family court relied on Rule 17(c), SCRCP, which is applicable to family court under Rule 2, FRCP, and provides: "The court shall appoint a guardian ad litem for a minor or incompetent person not otherwise represented *in an action....*" By statute, however, a consenting mother is not a party to the adoption proceeding. S.C.Code Ann. § 20-7-1734(A) (Supp.1999).