THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Adoptive Father
 and Adoptive Mother, Respondents,
 v.
 Child, a minor
 child under the age of fourteen years, Defendant,
 Birth Father
 and Birth Mother,[1] Appellants.
 
 
 

Appeal From Greenville County
 Aphrodite K. Konduros, Family Court Judge
Unpublished Opinion No. 2007-UP-529
Submitted November 1, 2007  Filed
 November 13, 2007    
AFFIRMED

 
 
 
 Adam  Fisher, Jr., of Greenville, for
 Appellants.
 Raymond W. Godwin, of Greenville, for Respondents.
 Cheryl Truesdale, of Greenville, Guardian
 ad Litem.
 
 
 

PER CURIAM: In
 this action for adoption, Birth Father and Birth Mother (collectively Birth
 Parents) appeal the family courts decision that their consents to adoption
 were valid and withdrawing the adoption was improper.  We affirm.
FACTS
Birth Parents were married and had a son (Child) born January 14,
 2004, in North Carolina.  The family lived in a two-bedroom apartment in Salisbury, North Carolina.  Birth Mother was diagnosed with obsessive
 compulsive disorder (OCD), and as a result of her illness, she struggled in
 raising Child.  Two months after Child was born, Birth Mother began
 contemplating adoption.  In March 2005, she became more serious about the
 idea.  Birth Father agreed to the idea because he felt it was in Childs
 best interest based on Birth Mothers condition.  
Birth Mother sought a family to adopt Child who: (1) knew God;
 (2) had no criminal background; and (3) already had a child so Child would have
 a sibling.  Birth Parents found Adoptive Father and Adoptive Mother (collectively Adoptive Parents),
 a married couple living in Simpsonville, South Carolina.  Adoptive Parents were
 married and had a daughter, born in 2001.  
On April 16, 2005, Birth Parents each signed a surrender of
 parental rights or consent to adoption (the Consent).  In part, the
 Consent provided, This consent and the accompanying surrender forfeits all
 rights and obligations which I may have to the adoptee.  Additionally, a letter dated April 15, 2005 (the Letter), addressed to Birth Parents was
 signed by both Adoptive Parents individually, as well as their attorney,
 stating Adoptive Parents have agreed to at least three visits a year at a
 mutually agreeable location and time and date.  They have also agreed to send
 you pictures and letters at least once a month and also to provide you with a
 telephone number in order to maintain regular phone contact.   
Since the signing of the Consent, Child has lived with Adoptive
 Parents.  On the evening Birth Parents signed the Consent, they felt
 they had made a horrible mistake and regretted their decision.  
On April 18, 2005, Adoptive Parents
 filed a summons and complaint for adoption.  Birth Parents filed a
 motion to intervene in the adoption, to which Adoptive Parents consented.  Birth
 Parents then filed an answer and counterclaim, which they later amended, asking
 the family court to set aside the Consents and to return Child to their
 custody.  The family court held a hearing and issued a temporary order
 finding the withdrawal of Birth Mothers Consent was not in Childs best interest
 and the Consent appeared voluntary on its face.  Additionally, the court found
 Birth Father did not raise any issue as to his Consent and denied Birth
 Parents motion for visitation.  Further, the family court ordered the
 voluntariness of Birth Mothers Consent be adjudicated at the final hearing.  

Following the final hearing, the family
 court found Birth Parents had not proved the Consents were invalid or that they
 were subject to any fraud, coercion, duress, or lack of voluntariness.  Further,
 the family court determined it was in Childs best interest to remain with
 Adoptive Parents.  The family court also found because Birth Parents had
 not paid any child support for a period exceeding six months, their parental
 rights were terminated.  
Birth Parents filed a Rule 59(e), SCRCP,
 motion for reconsideration asserting numerous points of error by the family
 court.  The family court denied the motion and issued an amended final
 order correcting what it termed some minor clerical mistakes.  This appeal
 follows.
STANDARD
 OF REVIEW
On
 appeal from a family court order, this Court has authority to correct errors of
 law and find facts in accordance with its own view of the preponderance of the
 evidence.  E.D.M. v. T.A.M., 307 S.C. 471, 473, 415 S.E.2d 812, 814 (1992).  When reviewing decisions
 of the
 family court, we note that the family court is in a superior position to judge
 the witnesses demeanor and veracity and give its findings broad discretion.  
Scott v. Scott, 354
 S.C. 118, 124, 579 S.E.2d 620, 623 (2003).  This degree of deference is
 especially true in cases involving the welfare and best interests of a minor
 child.  Ex
 parte Morris, 367 S.C. 56, 62, 624 S.E.2d 649, 652 (2006).  When the evidence is conflicting and
 susceptible to different inferences, the family court has the duty of
 determining not only the law of the case, but the facts as well, because it had the benefit of observing the
 witnesses and determining how much credence to give each ones testimony.  Anders v. Anders, 285 S.C. 512, 514, 331 S.E.2d 340, 341 (1985); see also Woodall
 v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154,
 157 (1996) (holding where
 evidence is disputed, the appellate court may adhere to the family courts
 findings).  
LAW/ANALYSIS
I.  Misrepresentations
Birth
 Parents argue the family court erred in failing to find misrepresentations by
 Adoptive Parents nullified the adoption.  We disagree.
Adoption terminates all rights of a birth parent over
 the adopted child. McLaughlin v. Strickland, 279 S.C. 513, 517, 309
 S.E.2d 787, 790 (Ct. App. 1983).  This
 includes termination of visitation rights.  Id.  If an adoption is to
 be based on consent, the birth parent must agree to relinquish all rights to
 the child.  Id.  A qualified consent which attempts to reserve rights in
 the birth parent does not sufficiently constitute consent to adoption required
 by law.   Id.

 Withdrawal of any consent or relinquishment is not
 permitted except by order of the court after notice and opportunity to be heard
 is given to all persons concerned, and except when the court finds that the
 withdrawal is in the best interests of the child and that the consent or
 relinquishment was not given voluntarily or was obtained under duress or
 through coercion.  Any person attempting to withdraw consent or relinquishment
 shall file the reasons for withdrawal with the family court.  The entry of the
 final decree of adoption renders any consent or relinquishment irrevocable.
 

S.C. Code Ann. § 20-7-1720 (Supp. 2006).
South Carolina jurisprudence disallows the
 revocation of consent voluntarily given particularly where the adoptive parents
 have taken the child into their home in reliance upon the consent.  Ellison v. Camby, 269 S.C. 48, 51, 236
 S.E.2d 197, 198 (1977); see also Driggers v. Jolley, 219 S.C. 31, 37, 64 S.E.2d
 19, 22 (1951) (recognizing the right to revoke consent is not absolute and
 noting the trend is in favor of enforcing consent when voluntarily given and
 accompanied by reliance on the part of the adoptive parents).  The South Carolina statutory adoption scheme leaves the question of withdrawal in the judges
 discretion, assuming the Consent to Adopt is on file.  Ellison, 269 S.C. at 51, 236 S.E.2d
 at 198.
[A] final decree of adoption may be vacated or set
 aside because of fraud in the procurement of the judgment.  Lowe v. Clayton, 264 S.C. 75, 80, 212
 S.E.2d 582, 584 (1975).  Parents who sign a consent to adoption waive their right to
 notice or appearance at the proceeding.  S.C. Code Ann. § 20-7-1700(A)(9)
 (Supp. 2006).  Thus, if a parents consent is fraudulently obtained, such fraud
 essentially acts to induce the parent not to present a case.  Hagy v. Pruitt, 339 S.C. 425, 431-32, 529 S.E.2d 714, 717-18 (2000).  Accordingly,
 the allegation that consent was fraudulently obtained sufficiently alleges extrinsic
 fraud.  Id.  Generally, fraud must be proved by clear and convincing
 evidence.  Id.

 A party asserting a claim for fraud in the inducement
 to enter into a contract must establish (1) a representation, (2) its falsity,
 (3) its materiality, (4) knowledge of its falsity or reckless disregard of its
 truth or falsity, (5) intent that the representation be acted upon, (6) the
 hearers ignorance of its falsity, (7) the hearers reliance on its truth, (8)
 the hearers right to rely thereon, and (9) the hearers consequent and
 proximate injury.

Brown
 v. Stewart, 348 S.C. 33, 41, 557 S.E.2d 676, 680 (Ct. App. 2001) (internal
 quotations and citations omitted).
Birth
 Parents assert Adoptive Parents failure to honor the visitation and telephone
 calls as provided by the Letter were misrepresentations.  Birth Mother
 testified she and Birth Father had not received visitation or photographs, and
 she believed they would not receive them.  Additionally, Birth Mother
 testified the visitation, photographs, and phone calls were all an integral
 part of the agreement.  However, on cross-examination, she admitted Adoptive
 Parents had not yet had the chance to comply with the visitation.  

Dr.
 Blake Allen Spence, who is certified to take consent and relinquishments for
 adoptions and to conduct home studies, took the Birth Parents Consents.  He
 testified Adoptive Parents and Birth Parents discussed visitation after the
 Consents were signed.  Further, he testified Adoptive Parents did not sign the
 Letter until after the Consents were signed.  
By Birth Mothers
 own testimony, Adoptive Parents have not yet had a chance to comply with the
 visitation.  The evidence in the record supports the family courts finding
 that the Consents were not
 subject to fraud.[2] Accordingly, the family court did not err in failing
 to allow Birth Parents to withdraw their Consents.
Additionally,
 Birth Parents contend errors in Adoptive Parents complaint that were later
 amended at the hearing were also misrepresentations.  These errors include the statements
 that Adoptive Parents had an adopted child when in actuality the child was
 their birth child, as well as Child did not own property in the state of Texas,
 when it should have stated South Carolina.  At the final hearing, Adoptive
 Parents sought to amend the complaint to correct these errors.  Birth Parents
 objected and contended the mistakes in the complaint raised issues of
 credibility.  However, the family court ruled Adoptive Parents could amend the
 complaint because the reference to Texas was a scriveners error, and Adoptive
 Parents could testify the child was their biological child.  
If
 Birth Parents took issue with the amending of the complaint, they should have
 appealed that ruling, not tried to label these errors as misrepresentations.[3] 
 Further, they do not explain how these seemingly minor errors prejudiced them,
 and we can discern no prejudice.  Accordingly, we find the family court did not
 err in failing to find the Consents should be revoked because of
 misrepresentations or fraud.
II.  Fitness Issues
Birth Parents argue
 the family court erred because issues exist regarding the fitness of Adoptive
 Parents.  We disagree.
Birth Parents
 provide a litany of alleged medical conditions by Adoptive Mother.  They assert
 Adoptive Mother takes the following medications: Toamax, Migrinal, and Botox
 injections for migraines; Neurontin for restless leg syndrome; Cymbalta for
 depression; Welbutrin for depression and anxiety; Lexapro for adjustment
 disorder; Prevacid for gastrointestinal reflux disease; and Zrytec for an
 allergic condition.  Birth Parents further contend Adoptive Mother has a
 history of fibromyalgia, bulimia, back aches, and has chronic situations with
 depression.  Additionally, Birth Parents allege Adoptive Mother, a doctor, prescribed
 medications and refills for herself.  
Birth
 Parents cite Murray v. Murray, 271 S.C. 62, 244 S.E.2d 538 (1978), and Peeples v. Peeples, 270 S.C. 116, 241 S.E.2d 159 (1978), in support of
 their argument that the fitness issues are sufficient for Adoptive Parents to
 lose custody of Child.  Both of these cases involve birth parents losing
 custody of their children to the other birth parent or a grandparent due to
 mental and emotional instability, and thus, greatly differ from the current
 situation.  Further, Adoptive Mother is on the medications pursuant to doctors
 orders to correct medical problems.  Many of these problems would not have any
 bearing on Adoptive Mothers fitness as a parent.  Additionally, Adoptive
 Mother is on the medications to treat her problems for depression and anxiety. 
 In regards to the allegations she wrote her own prescriptions, Adoptive Mother
 also testified she only extended prescriptions for which she already had a
 prescription, which did not violate any ethical rules, and she would never
 write a new prescription for herself.  
Further,
 Birth Parents argue because Adoptive Father did not testify, there is a
 presumption his testimony would be adverse to his position, citing to McCowan v. Southerland.  253 S.C. 9, 168 S.E.2d 573 (1969).  In McCowan,
 the South Carolina Supreme Court found when facts
 were peculiarly within [a defendants] knowledge and [h]e did not testify . .
 . his unexplained failure to do so raises an inference that his testimony, if
 it had been submitted, would have been unfavorable to his position.  Id. at 12, 168 S.E.2d at 574.  Here, Father was not the only party that could
 testify he was a fit parent.  Adoptive Mother, the guardian ad litem (GAL), Cheryl
 Truesdale, a clinical psychologist, Dr. Joanne Armstrong, and
 another witness, Stacy Garrett, all testified Adoptive
 Father was a fit parent.  
Additionally, Birth Parents contend at the time of the
 hearing, Adoptive Parents lived in a two-bedroom apartment with Child sharing a
 room with Adoptive Parents daughter.  Although Adoptive Parents did
 temporarily live in a two-bedroom apartment, it was only for a few months while
 construction was being completed on their five bedroom home, in which Child has
 his own bedroom, as well as a playroom and a backyard.  Accordingly, the family
 court did not err in finding Adoptive Parents to be fit parents.
III.  Best Interest of the
 Child
Birth Parents
 maintain it is in the best interest of Child that they raise him.  We disagree.
In adoption cases the child is the proper focus for
 the determination.  Phillips v. Baker, 284 S.C. 134, 136, 325
 S.E.2d 533, 535 (1985).  Section 20-7-1720 authorizes the family court to grant
 a withdrawal of consent to adoption only if the court finds that the
 withdrawal is in the best interests of the child . . . . 
At
 the time Child was placed with Adoptive Parents, his weight was at the twenty-fifth
 percentile on weight charts for his age, making him severely underweight.  Further,
 he suffered from a chronic buildup of fluid on his left eardrum, causing
 partial deafness.  Child also never wore shoes while he lived with Birth
 Parents and had an abnormality called metatarsus abductus, causing both feet to
 turn inward.  Additionally, Child had developmental delays in his speech and
 fine motor skills.  
Childs
 physical condition has shown improvement since he has been living with Adoptive
 Parents.  After several months, his weight increased to the seventy-fifth
 percentile.  Further, Adoptive Parents have enrolled him in both speech and
 occupational therapy.  Additionally, Adoptive Parents had Child examined by an
 ear, nose, and throat specialist, who placed tubes in Childs ears to alleviate
 fluid causing Child pain and hearing loss.  Child has also received medical
 assistance for his metatarsus abductus and can now wear shoes and bear his own
 weight allowing his walking to significantly improve.  
Further,
 Adoptive Mother is a pediatrician who currently stays at home with Child.  Dr.
 Armstrong testified Child had a strong bond with Adoptive Parents.  The GAL
 testified she had concerns with Child being returned to Birth Parents. 
 Specifically, when she went to Birth Parents apartment for a planned visit,
 they had very little food in the home.  Further, Birth Mother testified she
 intended to home school Child, which concerned the GAL because she found Child
 lacked socialization at the time he was placed with Adoptive Parents and therefore,
 thought home schooling would be detrimental to him.  Accordingly, the GAL
 believed it was in Childs best interest to remain with Adoptive Parents.  From a review of the record,
 the evidence supports the family courts decision that revoking the Consents
 was not in Childs best interest, and thus, we find no error in the decision.
 
CONCLUSION
We find the family
 court did not err in finding the Consents should not be revoked and the
 adoption should not be withdrawn because of misrepresentations or fraud. 
 Further, we find the Adoptive Parents are fit parents and not withdrawing the
 adoption is in Childs best interest.  Accordingly, the order of the family
 court is
AFFIRMED.[4]
ANDERSON,
 SHORT, and WILLIAMS, JJ., concur.

[1] This case is sealed, thus the parties names have
 been changed. 
[2] Further, even if Birth Parents met their burden of proving
 the Consents were given as a result of fraud, they must also prove the
 withdrawal of their Consents was in Childs best interest.  See §
 20-7-1720.  As discussed in more detail in the third issue, we find the
 withdrawal of Birth Parents consent is not in the best interest of Child.  
 
[3] Further, Rule 15, SCRCP,
 provides, A party may amend his pleading once
 as a matter of course at any time before or within 30 days after a responsive
 pleading is served or, if the pleading is one to which no responsive pleading
 is required and the action has not been placed upon the trial roster, he may so
 amend it at any time within 30 days after it is served.  Otherwise a party may
 amend his pleading only by leave of court or by written consent of the adverse
 party; and leave shall be freely given when justice so requires and does not
 prejudice any other party. A party shall plead in response to an amended
 pleading within the time remaining for response to the original pleading or
 within fifteen days after service of the named amended pleading, whichever
 period may be the longer, unless the court otherwise orders.
[4] We decide this case without oral arguments pursuant
 to Rule 215, SCACR.