# The Supreme Court of South Carolina

Ex Parte: Mickey Ray Carter, Jr. and Nila Collean Carter,
Movants,

Of Whom Nila Collean Carter is Petitioner.

In Re:

John Roe and Mary Roe, Respondents,

v.

L.C. and X.C., minors under the age of seven years,
Defendants.

Appellate Case No. 2017-000806

---

## ORDER

---

The petition for rehearing is granted.  We dispense with further briefing and argument.  The attached opinion is substituted for the previous opinion, which is withdrawn.  Any petition for rehearing regarding the substituted opinion must be actually received by this Court within five (5) days of the date of this order.

s/ John W. Kittredge                          A.C.J.

s/ Kaye G. Hearn                              J.

s/ John Cannon Few                            J.

s/ George C. James, Jr.                       J.

                                <u>s/ Doyet A. Early, III                                    </u>A.J.

Columbia, South Carolina
April 11, 2018

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Ex Parte: Mickey Ray Carter, Jr. and Nila Collean Carter, Movants,

Of Whom Nila Collean Carter is Petitioner.

In Re:

John Roe and Mary Roe, Respondents,

v.

L.C. and X.C., minors under the age of seven years, Defendants.

Appellate Case No. 2017-000806

———————————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————————

Appeal from Charleston County
Edgar H. Long, Jr., Family Court Judge

———————————

Opinion No. 27786
Heard January 31, 2018 – Filed March 21, 2018
Withdrawn, Substituted, and Refiled April 11, 2018

———————————

A. Mattison Bogan, of Nelson Mullins Riley and Scarborough, LLP, of Columbia, for Petitioner.

K. Jay Anthony, of the Anthony Law Firm, PA, of Spartanburg, Emily McDaniel Barrett and Thomas P. Lowndes, Jr., both of Charleston, for Respondents.

**PER CURIAM:** In this adoption matter, Petitioner Nila Collean Carter sought to revoke her consent to the adoption of her two biological children. Throughout the resulting procedural morass, Petitioner was never provided an opportunity to be heard on the merits of her claim before the adoption was finalized. We issued a writ of certiorari to review the court of appeals' unpublished decision affirming the family court's denial of Petitioner's motion to set aside the final adoption decree pursuant to Rule 60(b), SCRCP. *Ex Parte Carter*, Op. No. 2017-UP-043 (S.C. Ct. App. filed Jan. 13, 2017). Because Petitioner's Rule 60(b) motion was timely filed and sufficiently alleged extrinsic fraud, we reverse and remand this matter to the family court for further proceedings.

## I.

Petitioner and her ex-husband Mickey Ray Carter, Jr.[1] are the biological parents (collectively "the Carters") of two children—a daughter born in 2009 and a son born in 2011. The Carters were married in May 2010, and by early 2014, the couple was experiencing financial and marital stressors. Given the difficult circumstances facing the Carters and the unavailability of extended family support, the Carters began discussing private adoption as an alternative that they believed was preferable to the children being placed in foster care.

Petitioner reached out to attorney Emily McDaniel Barrett, who arranged the adoption on behalf of both couples.[2] From the beginning, Petitioner insisted on

---

[1] Although Mr. Carter participated in proceedings below, he did not join the petition for rehearing to the court of appeals and is not a party on certiorari to this Court.

[2] Petitioner's brief indicates that she located Ms. Barrett through her website in the

taking an active part in the adoption process and explained that she wanted an open adoption because that was "the only way this won't destroy me. I need them to know how much I love them."

In April 2014, the Carters each signed a consent to adoption of their two children by Respondents John and Mary Roe ("Adoptive Couple"). Four days later, the adoption action was filed. Notably, the documents signed by the Carters included a provision waiving service and notice of the adoption action.

Eight days after the adoption action was filed, the Carters each executed a notarized document titled "Withdrawal of Parental Consent to Adoption" purporting to revoke consent on the basis of emotional duress. Thereafter, the Carters sought through many avenues to withdraw their consent.[3]

The South Carolina Adoption Act provides that:

> Withdrawal of any consent or relinquishment is not permitted except by order of the court after notice and opportunity to be heard is given to all persons concerned, and except when the court finds that the withdrawal is in the best interests of the child and that the consent or relinquishment was not given voluntarily or was obtained under duress or through coercion. Any person attempting to withdraw consent or relinquishment shall file the reasons for withdrawal with the family court. The entry of the final decree of adoption renders any consent or relinquishment irrevocable.

S.C. Code Ann. § 63-9-350 (2010).

The Carters were initially represented by counsel, who filed on their behalf a motion to intervene in the adoption action, along with supporting affidavits to contest the validity of the consents.[4] At the motion hearing before the family court,

course of an internet search and that Petitioner believed Ms. Barrett represented both the Carters and the Roes.

[3] Once the Carters expressed an intent to challenge the validity of their consents, they were no longer permitted visitation with the children.

[4] It appears the Carters' efforts to intervene were delayed due to confusion over the county in which the (sealed) adoption proceeding was pending; the Carters were

the Carters' counsel explained that the Carters faced difficult life circumstances and felt pressured to sign the consents. In support of his argument, counsel cited this Court's decision in *McCann v. Doe*, 377 S.C. 373, 660 S.E.2d 500 (2008), for the proposition that the confluence of several emotional stressors can render an otherwise validly executed consent to adoption involuntary and revocable.

Counsel for the Adoptive Couple opposed the motion, arguing that because adoption proceedings are private and confidential proceedings, the Carters' recourse was not as intervenors in the adoption action but through a separate action challenging the consents "outside the adoption itself." The family court agreed and denied the Carters' motion to intervene, stating "I don't believe procedurally that's the way that this should be handled." The family court expressly declined to reach the merits of whether the consents should be withdrawn. From this point forward, the Carters proceeded pro se.[5]

At the direction of the family court, a week later, the Carters filed a separate action, along with affidavits supporting their challenge to the validity of the consents, and requested that a hearing be scheduled before the final adoption hearing. Between August 2014 and April 2015, the Carters appeared and asked to be heard at *seven separate hearings* before six different family court judges, each of whom refused to address the merits of the Carters' claim based on perceived procedural abnormalities and gave the Carters inconsistent (and at times incorrect) instructions on the proper procedure through which the Carters should have pursued their claim.[6] In every instance, the Carters timely followed these instructions. Nevertheless, the Carters' claim was never evaluated on the merits.

Meanwhile, the Adoptive Couple, through counsel, requested a final adoption

---

residents of Horry County and the Adoptive Couple resided in Berkeley County, yet the adoption action was filed in Charleston County.

[5] The record reveals the Carters wished to proceed with the assistance of counsel but could not afford additional legal fees following the initial hearing.

[6] Family court judges assigned to hear this matter avoided hearing the Carters' case for a variety of reasons, including the claim of insufficient docket time requested, finding fault with the Carters for doing precisely what other family court judges told them to do, and perhaps the most troubling reason for not hearing the Carters' case was the hearing "should not have been scheduled on a Friday." Mr. Carter eventually abandoned his claim; we find it remarkable that Petitioner did not throw in the towel as well.

hearing. The Adoptive Couple's counsel gave no notice to the Carters. On December 15, 2014, a final hearing was held in the adoption case and a final order of adoption was issued on that date by a *seventh* family court judge who, according to the record before us, was unaware of the Carters' pending challenge to the consents. Although counsel for the Adoptive Couple was well aware of the Carters' separate pending challenge, the final adoption hearing transcript includes no reference to this. Rather, when the family court judge asked if there was anything else that needed to be placed on the record before the first witness was sworn, counsel for the Adoptive Couple never mentioned the Carters' pending action and stunningly responded "I think we're good, Your Honor." Conversely, it would be stunning to think a family court judge would have proceeded with the adoption had the judge been made aware of the separate pending action. However, allegedly without the benefit of this critical information, the family court entered an order approving the adoption.

Armed with the final adoption order, counsel for the Adoptive Couple filed a motion to dismiss the Carters' separate action challenging the validity of their consents. At the April 1, 2015 motion hearing, counsel for the Adoptive Couple "ask[ed] for this matter to be dismissed on the grounds that there's been an adoption granted and everything that has been filed in the [Carters'] Amended Petition . . . is a moot point right now, and if they have any issues to take up, it would be based on extrinsic fraud and they have not pled that." The court responded by reciting the last sentence of section 63-9-350—"The entry of the final decree of adoption renders any consent or relinquishment irrevocable."

Petitioner, understandably frustrated that the adoption had been finalized before the separate action had been heard, informed the court that "we had a right to be notified of that final hearing and they didn't notify us of that final hearing and allow us to . . . appear in court to explain that."[7] The family court understood the Carters' position—"your argument [is that] you were . . . robbed of your opportunity to appear and contest the validity of your consent[s]." In this regard, the court agreed with counsel for the Adoptive Couple that the Carters only remaining recourse was to file a motion alleging extrinsic fraud. The court further informed the Carters that their challenge should have been "in connection with the adoption proceeding." The court then found fault with the Carters' filing of the

---

[7] It appears from Respondents' rehearing petition that the Carters were sent an email in the morning of December 15, 2014, advising them of the adoption hearing later that day.

separate action: "You see you don't file a new action trying to undermine or say that our consents are invalid. You can't do that because the law won't allow it, okay . . . that would be handled not by a separate action as you've done." As noted above, the Carters' filing of the separate action was directed by another family court judge who rejected the Carters' attempt to challenge their consents in connection with the adoption proceeding.

The Carters wasted no time in filing the motion suggested by the family court judge. Just six days after the April 1, 2015 hearing, the Carters filed a Rule 60, SCRCP motion in the adoption action, requesting relief from the final adoption order, alleging the consents were involuntary and the product of duress, coercion, and extrinsic fraud in that the Carters' attempts to be heard were systematically thwarted by the Adoptive Couple's attorneys.[8]

Three days later, a different family court judge summarily denied the Carters' Rule 60(b) motion on the ground that it was untimely. The Carters appealed, arguing the family court erred in denying their Rule 60 motion as untimely and that the validity of the adoption was compromised because the Carters' challenge to their consents was not resolved before the adoption was finalized.

The court of appeals affirmed the family court's denial of the Carters' Rule 60(b) motion. *Ex Parte Carter*, Op. No. 2017-UP-043 (S.C. Ct. App. filed Jan. 13, 2017). Thereafter, this Court issued a writ of certiorari to review the court of appeals' decision.

## II.

Petitioner argues the court of appeals erred in finding her Rule 60(b) motion did not allege extrinsic fraud and that the family court erred in finding the motion was not timely filed. We agree.

## A.

---

[8] In response, counsel for the Adoptive Couple filed a motion, along with a supporting memorandum, and affidavits seeking a Rule to Show Cause for why the Carters should not be held in civil and criminal contempt for "proceed[ing] to file a series of motions in an attempt to disrupt the adoption."

Once a final adoption decree is entered, a *validly* executed consent to adoption is irrevocable.  S.C. Code Ann. § 63-9-350 (emphasis added).  However, a court retains its authority to grant collateral relief from an adoption decree on the ground of extrinsic fraud.  S.C. Code Ann. § 63-9-770(B) (2010).  Extrinsic fraud "is 'fraud that induces a person not to present a case or deprives a person of the opportunity to be heard.'"  *Hagy v. Pruitt*, 339 S.C. 425, 431, 529 S.E.2d 714, 718 (2000) (quoting *Hilton Head Center of S.C. v. Pub. Serv. Comm'n*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987)).

In their Rule 60(b) motion, the Carters alleged, "under 63-9-770 there was extrinsic fraud committed . . . by not allowing us the right to be heard on filing multiple motions of intent to contest consents and to attack the merits of the adoption with this Honorable Court."  The motion further stated:

> Mickey and Nila Carter have tried repeatedly to withdraw[] consents which [were] illegally obtained and they informed . . . the Adoptive Couple[,] . . . in addition to this Honorable Court yet they have never been heard on this issue[,] and further, [counsel for the Adoptive Couple] and the Law firm she works for have continuously attempted to block our access to the Honorable Court so we may be heard on this matter.

The court of appeals erred in finding the Carters' Rule 60(b) motion did not sufficiently allege extrinsic fraud.  The Carters' motion expressly asserted "extrinsic fraud" and specifically cited section 63-9-770, which is the statutory provision addressing the family court's authority to set aside an adoption decree on that basis.  The motion further alleged the Carters were misguided and misled into signing the consents and waiving the right to notice of the proceedings and that their subsequent attempts to appear and be heard as to the validity of the consents were repeatedly thwarted by opposing counsel.

Moreover, at the heart of the extrinsic fraud claim is the Adoptive Couple's effort, through counsel, to push through the final adoption hearing knowing full well of the Carters' repeated requests to be heard on their pending separate action.  Most troubling is counsel's alleged failure to be candid with the family court when asked if there was "anything else."  These specific averments manifestly state a claim for extrinsic fraud.  Thus, extrinsic fraud was sufficiently alleged in the Rule 60(b) motion, and the court of appeals erred in affirming the family court's dismissal on

that basis. *See Hagy*, 339 S.C. at 431–32, 529 S.E.2d at 718 (holding allegations that fraudulent actions which induced a mother to sign a consent to adoption thereby waiving her right to notice and appearance in the adoption proceeding sufficiently alleged extrinsic fraud); *Greer v. McFadden*, 295 S.C. 14, 17, 366 S.E.2d 263, 265 (Ct. App. 1988) (holding even if a pro se claim is not framed with expert precision, where the point is clear, the issue should be addressed); *cf. Iowa Sup. Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 172–74 (2013) (finding an attorney's failure to disclose to the family court the existence of separate pending actions that could potentially impact the family court's division of marital assets constituted extrinsic fraud). We turn now to the issue of whether the family court erred in finding the Carters' Rule 60(b) motion was untimely.

## B.

Rule 60(b), SCRCP, provides that a party may be relieved from a final judgment on the basis of "fraud, misrepresentation, or other misconduct of an adverse party." A motion pursuant to Rule 60(b) "shall be made within a reasonable time, and . . . not more than one year after the judgment, order, or proceeding was entered or taken."

The final adoption decree was entered December 15, 2014. At a hearing on April 1, 2015, the family court instructed the Carters to file the Rule 60(b) motion. The Carters did so on April 7, 2015. Because this period of time is both reasonable and not more than one year after the entry of the final adoption decree, we find the family court abused its discretion in finding the Carters' Rule 60(b) motion was untimely. *See Coleman v. Dunlap*, 306 S.C. 491, 495, 413 S.E.2d 15, 17 (1992) (where Rule 60(b) motion is filed shortly after the movant becomes aware of the basis therefor and there is no evidence of unreasonable delay, the motion is timely). Because the Rule 60(b) motion was timely filed, Petitioner is entitled to an opportunity to be heard on the merits of her claim therein.

## III.

In reversing, we have made plain our grave concern for the manner in which this matter was handled in the family court. We, however, emphasize that we express no opinion on the merits of Petitioner's claim that her consent was not validly obtained.

We reverse the court of appeals' decision and remand this matter to the family

court[9] for a hearing on the merits of the Rule 60(b) motion.  We direct the family court to appoint an attorney to represent Petitioner in the proceedings upon remand within ten (10) days of the date the remittitur is sent to the lower court.  We further direct this matter to be heard within ninety (90) days of the date the remittitur is sent and that an order addressing the merits be issued by the family court within thirty (30) days of the date of the hearing.

**REVERSED AND REMANDED.**

**KITTREDGE, Acting Chief Justice, HEARN, FEW, JAMES, JJ., and Acting Justice Doyet A. Early, concur.**

---

[9] Given judicial department budgetary constraints, we direct the chief administrative family court judge to assign this matter to any available judge.