18452

Ex Parte Harbert W. Corley and Ina Corley, Respondents. In Re Harbert W. CORLEY and Ina Corley, Respondents, v. CENTENNIAL CONSTRUCTION CO. and First Provident Corporation, Appellants. LESTER BROTHERS, INC., Appellant, v. Harbert W. CORLEY, Ina H. Corley, and Centennial Construction Co., of whom Harbert W. Corley and Ina H. Corley are, Respondents.

(146 S. E. (2d) 609)

*Robert G. Knight, Esq.,* of Florence, *for Appellant, Lester Brothers, Inc., Rogers W. Kirven, Esq.,* of Florence, *for Appellants,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondents, Harbert W. Corley and Ina Corley,*

February 3, 1966.

Moss, Justice.

The record here shows that prior to October 9, 1962, Harbert W. Corley and Ina Corley, the respondents herein, owned a home located on Lot No. 15, in Block F, of Brookgreen Park, in the County of Florence. On October 9, 1962, the respondents entered into a contract with Centennial Construction Co., an appellant herein, whereby it agreed to construct on Lot No. 78 of College Park Subdivision, a new dwelling for a contract price of $20,600.00. The dwelling was to be constructed according to written specifications meeting the requirements of the Federal Housing Administration. The contract provided for a down payment of $2,100.00, $600.00 of which was paid in cash and a conveyance by the respondents to this appellant of title to their home in Brookgreen Park, the agreed equity being $1,500.00. The balance of the purchase price was to be paid from the proceeds of a mortgage loan guaranteed by the Federal Housing Administration, which was to be obtained on behalf of the respondents by First Provident Corporation, an

appellant herein. A commitment for this loan was obtained from the Federal Housing Administration on December 26, 1962.

Centennial Construction Co., on January 10, 1963, conveyed in fee simple Lot No. 78 in College Park Subdivision to the respondents.

Construction of the new dwelling was principally done in June, July and August, 1963. During the course of such construction, the respondents made complaints to the appellants with respect to certain defects in the construction and they undertook to correct such. It was discovered that a mistake had been made in the location of the dwelling upon the lot and it was also asserted that the restrictive covenants applicable to the College Park Subdivision were violated, in that the residence contains on the ground floor an area of less than that required by such restrictions.

The respondents, on September 16, 1963, instituted an action for the rescission of the aforesaid contract, alleging and relying upon delay in performance, mislocation of the house upon the lot in question, defective construction and noncompliance with the building restrictions applicable to College Park Subdivision.

The respondents, in their complaint to rescind the contract entered into by them with the appellants for the construction of a dwelling for them, alleged in paragraph (7) thereof that Centennial Construction Co., "negligently executed said construction and negligently failed to complete said construction within the time called for in the contract and said house is still not complete nor has it been approved by FHA." In the prayer of their complaint the respondents demanded the following relief: (a) that the contract between the parties be rescinded and Centennial Construction Co. be ordered to reconvey to the respondents their house and lot in Brookgreen Park; (b) that it be required to refund the respondents all moneys, credits and deposits related to said transaction upon the respondents reconveying to Centennial

Lot No. 78 of the College Park Subdivision; and (c) that the respondents be refunded all moneys paid in the form of rent subsequent to their having executed a deed of their house and lot in Brookgreen Park. In the alternative, the respondents demanded in the event the Court failed to grant the aforesaid relief, that they be awarded damages for the negligent construction, placement of the house, impairment of marketable title and unreasonable delay in completing construction.

The answer of the appellants contained (1) a general denial; (2) that under the terms of the contract between the parties the appellants were to furnish a loan of $19,000.00; that they were to construct the home according to FHA specifications, all of which has been done; and (3) that on or about August 23, 1963, the appellants were requested by the respondents to correct certain defects in connection with the construction of the dwelling; that these adjustments were made and the respondents then refused to conclude the closing of the loan on August 26, 1963. The appellants asked that the respondents be required to pay them the amount due on the contract.

The record shows that the respondents, on January 14, 1963, obtained from Lester Brothers, Inc., another appellant herein, a construction loan in the amount of $15,200.00, giving to this bank a mortgage upon Lot No. 78 in the College Park Subdivision, which said mortgage was duly recorded in the office of the Clerk of Court for Florence County.

The action to rescind the contract entered into by the respondents with Centennial Construction Co. and First Provident Corporation was referred for trial to a special referee. A hearing was convened on November 12, 1963, at which time the testimony was taken. Harbert W. Corley testified at this hearing that he knew the final FHA inspection had been completed and that "my wife and son met the FHA man out there." He admitted that he was present on August

23, 1963, when with his attorney an inspection of the dwelling was made and agreed to close the FHA loan on August 26 or 27, 1963, providing certain "items were fixed right." He testified that a further inspection of the house, with his attorney, his wife and a representative of FHA present, showed that the items objected to had been corrected.

A representative of the appellant testified that the dwelling was inspected on August 23, 1963, by a representative of FHA and "they have passed the house as it stands." This representative also testified with reference to FHA approval, as follows:

"Q. Have they given final approval?
"A. Oh, yes, we have final approval.
"Q. Dated when?
"A. August 28th, 1963."

The special referree filed his report, dated November 19, 1963, recommending that the complaint of the respondents for the rescission of the aforesaid contract be dismissed without prejudice to any cause of action that they might have upon the contract for damages. The special referee found that:

"Final approval of the construction was obtained from the Federal Housing Administration on the 23rd day of August, 1963. The testimony on behalf of the Defendants was that they were ready and able at this time to close the loan and give possession of the house to the Plaintiffs. The Plaintiffs refused to close the loan or to accept possession."

The exceptions of the respondents here to the report of the special referee were overruled and his recommendations were adopted by an order of the court dated February 29, 1964. This order became final because the respondents did not appeal therefrom.

The record shows that Lester Brothers, Inc., on April 24, 1964, instituted an action to foreclose its mortgage covering the premises involved in the rescission action. This case is now pending.

It is agreed that the present action "was commenced by the filing of a verified petition in connection with two cases." It is alleged, as to the rescission action, that the testimony to the effect that the dwelling which the appellants contracted to build for the respondents had been inspected and approved by the Federal Housing Administration was false and no final approval of the construction of such building has ever been made by said Administration. It is further alleged that the falsity of the testimony about the approval of the construction of the dwelling, which was the subject of the contract between the respondents and said appellants, concerned a material fact in the litigation between them and constituted a fraud upon the court. The respondents demanded that the judgment of the court, dated February 29, 1964, and the report of the special referee, dated November 19, 1963, be set aside and declared null and void, and for an order granting the respondents a new trial in said case. The respondents further demanded that Lester Brothers, Inc., be enjoined from proceeding against them on its mortgage pending a determination of the first action, and asserted that should the judgment in the first action be set aside it would materially affect the outcome of the foreclosure proceeding.

Based upon the verified petition of the respondents a rule to show cause and a preliminary injunction was issued. This matter was heard at Chambers, on July 2, 1964, before the Honorable G. Badger Baker, at which time the testimony was taken and various exhibits were offered.

At the hearing, representatives of the Federal Housing Administration testified that the dwelling in question had not received final approval. The representative of the appellants did not deny that he had testified that final approval of the construction of the dwelling in question had been made. This witness endeavored to explain the contradiction between his testimony and that of representatives of the Federal Housing Administration by stating that he was under the impression that certain documents constituted final approval.

The record shows that in the present action the respondents are represented by different counsel from the one who had represented them in the rescission action. The former counsel was called as a witness for the respondents and he testified that prior to the hearing before the special referee, on November 12, 1963, that he and Harbert W. Corley "had occasion to call Columbia and talk with the FHA officials—the head-man so to speak in the office, and at that time I was informed that final approval had not been given, and I went to the hearing under the impression that it had not—that was later."

We point out again that in the action by the respondents to rescind their contract with the appellants that it was specifically alleged that "said house is still not complete nor has it been approved by FHA." This allegation of the complaint was denied in the answer of the appellants. Thus it appears that the question of whether the house had final Federal Housing Administration approval was involved in the rescission action and constituted an issue of fact in that case. The respondents' claims, with respect to the defects in the construction of the dwelling, were wholly inconsistent with Federal Housing Administration approval and there was every reason for them to dispute the testimony in behalf of the appellants on this point, which they neglected to do.

By his order dated January 11, 1965, the circuit judge directed that his order of February 29, 1964, hereinbefore referred to, be modified and that those portions of it dealing with the approval of the dwelling by the Federal Housing Administration be rescinded. He further directed that the matter be referred for the purpose of determining whether or not the failure of the appellants to secure approval of the Federal Housing Administration and the lapse in its commitment to insure the loan constitute grounds for recission of the contract between the respondents and the appellants.

Concerning the testimony of the appellants that the dwelling in rescission had received Federal Housing Administration approval, the circuit judge found:

"* * * It is clear that he was mistaken and that he should have known that these documents did not represent final approval of the construction. While I am not finding at this time that Mr. Rainwater committed perjury, the showing made before me on the rule to show cause indicates that the statements made by him under oath were made with a grossly negligent and reckless disregard of the truth. If the testimony taken at a subsequent hearing shows that his testimony was false knowingly or that he should have known that it was false, then it would be as if perjury had been committed at the original hearing and could constitute a fraud upon this Court."

He also found that "the false testimony concerned a matter which at the time of the hearing in that action was collateral to the issues being tried." The circuit judge, with regard to the action of Lester Brothers, Inc. against the respondents, enjoined further proceedings pending a determination of the action for rescission and the establishment of an agency relationship between Centennial Construction Co. and First Provident Corporation, and Lester Brothers, Inc.

This case is before us upon separate appeals by Centennial Construction Co., and First Provident Corporation, and by Lester Brothers, Inc.

One of the primary purposes of the complaint is to apprise the opposite party of the nature of the action against him. The complaint informs the defendant of the matters and things which the plaintiff may attempt to prove against him because without such knowledge they would be unable to prepare their defense. The object of pleading is to advise the parties of the issues they will be called upon to meet. What is essential to be proved is essential to be alleged. *Hunter v. Hyder,* 236 S. C. 378, 114 S. E. (2d) 493. One of the grounds for the rescission of the contract in this case, as asserted in the respondents' complaint, dated September 16, 1963, was that the dwelling had not been approved by FHA. The respondents are bound by this

allegation of their complaint. *Elrod v. All,* 243 S. C. 425, 134 S. E. (2d) 410.

The testimony shows that the respondents knew prior to the trial of the rescission action that the construction of the dwelling in question had not been approved by the Federal Housing Administration.

The case of *Bryan v. Bryan,* 220 S. C. 164, 66 S. E. (2d) 609, was a suit in equity to set aside a judgment at law on the ground that it was obtained by false and perjured testimony. In such case, we said:

"There is no doubt that a court of equity has inherent power to grant relief from a judgment on the ground of fraud. However, not every fraud is sufficient to move a court of equity to grant relief from a judgment. Generally speaking, in order to secure equitable relief, it must appear that the fraud was extrinsic or collateral to the question examined and determined in the action in which the judgment was rendered; intrinsic fraud is not sufficient for equitable relief. In 31 Am. Jur., Judgments, Section 655, page 232, it is stated: 'Equitable relief from a judgment is denied in cases of intrinsic fraud, on the theory that an issue which has been tried and passed upon in the original action should not be retried in an action for equitable relief against the judgment, and that otherwise litigation would be interminable; relief is granted for extrinsic fraud on the theory that by reason of the fraud preventing a party from fully exhibiting and trying his case, there never has been a real contest before the court of the subject matter of the action.'

"There is considerable diversity of opinion as to whether false testimony alone constitutes a sufficient ground for equitable relief against a judgment resulting from it. 'Although some cases sustain the doctrine that equity may grant relief against a judgment obtained by means of false testimony, provided it was procured, concocted, and intentionally produced by the successful party, the weight of authority is to the effect that ordinarily there is no ground for equitable

interference with a judgment in the fact that perjury or false swearing was committed by such party or his witnesses at the trial, at least where the perjurious or false evidence was not accompanied by any extrinsic or collateral fraud, and related to issues or matters which were or could have been considered in the original cause.' 49 C. J. S., Judgments, § 374. Also, see 31 Am. Jur., Judgments, Sections 595 and 662; Annotations 16 A. L. R. 397, 88 A. L. R. 1201 and 126 A. L. R. 390.''

Perjury or false swearing is a species of intrinsic, not extrinsic, fraud. An action in equity will not lie to set aside a judgment in an action for "intrinsic fraud", that is, for perjury or false swearing at the trial. *United States v. Throckmorton,* 98 U. S. 61, 25 L. Ed. 93; *Toledo Scale Co. v. Computing Scale Co.,* 261 U. S. 399, 43 S. Ct. 458, 67 L. Ed. 719. For other cases see 22A Words and Phrases, Intrinsic Fraud, page 116.

The sole contention of the respondents is that the judgment rendered against them in the rescission action was based upon perjured or false testimony given in behalf of the appellants. An allegation that a witness perjured himself or gave false testimony is insufficient because the materiality of the testimony, and the opportunity to attack it, was open at the trial. The respondents were fully aware, according to their complaint and their testimony, that the Federal Housing Administration's approval had not been given in the construction of their dwelling. They should have, but did not, offer evidence relating to this issue which could have been considered in the original action.

Assuming the falsity of the testimony of the appellants, with reference to Federal Housing Administration approval of the dwelling constructed by the appellants for the respondents such would constitute only "intrinsic fraud" and, as such, it furnishes no ground for setting aside of the judgment obtained in the original cause.

We conclude that the circuit judge was in error in vacating the final judgment rendered in the rescission case.

Having reached the foregoing conclusion, it necessarily follows that the circuit judge was also in error in enjoining Lester Brothers, Inc., from prosecuting their foreclosure action against the respondents, pending a determination of the action for rescission.

The judgment of the lower Court is reversed and this case remanded thereto for proceedings consistent herewith.

Reversed and remanded.

LEWIS, BUSSEY and BRAILSFORD, JJ., concur.