THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Aunt and Uncle, Appellants,
 
 
 

v.

 
 
 
 Mother and
 Father, Respondents.
 In the Interest of Child (DOB: 03/03/02), a minor child.[1]   
 
 
 

Appeal From Aiken County
 Peter R. Nuessle, Family Court Judge
Unpublished Opinion No. 2008-UP-210
Heard February 5, 2008  Filed March 31, 2008    

AFFIRMED IN PART, REVERSED IN PART, AND
 REMANDED 

 
 
 
 Jeffrey M. Butler, of Walterboro, for
 Appellants.
 David W. Miller, of Aiken and John D. Elliott, of Columbia, for Respondents.
 
 
 

PER CURIAM:  Aunt
 and Uncle appeal from the family courts order, which (1) denied their petition
 to terminate the parental rights of Mother and Father, (2) granted Mother
 additional and more extensive visitation with Child, and (3) required Aunt and
 Uncle to pay Fathers and Childs guardian ad litem (GAL) fees.  We affirm in
 part, reverse in part, and remand. 
FACTS
Shortly after Childs birth on March 3,
 2002, Father was hospitalized due to a drug overdose.  Thereafter, Mother and
 Father (collectively Parents) tested positive for cocaine, and the Department
 of Social Services (DSS) placed Child with her maternal grandmother
 (Grandmother).  DSS also imposed a safety plan which prohibited Parents from any
 unsupervised contact with Child.  After Parents violated the safety plan, law
 enforcement removed Child from Grandmothers custody and took her into
 emergency protective custody (EPC).  On April 25, 2002, DSS placed Child in foster
 care.  
At a removal merits hearing on May 30, 2002, the family court found
 Child was an abused and/or neglected child as defined in [South Carolina Code
 Annotated section] 20-7-490 (Supp. 1997).  The nature of the harm to the child
 is threat of harm of physical neglect by [Mother and Father] based on their
 positive drug screen for cocaine.  The family court ratified a consent order
 for removal and a placement plan, which granted legal custody of Child to DSS. 
 The family court also required Parents to attend bi-weekly supervised visits
 with Child and to each pay $50 per month in child support.    Further, it
 ordered Parents to participate in a drug assessment program, submit to random
 drug tests, and attend family counseling to address past instances of criminal
 domestic violence.  Additionally, the family court required Father to attend parenting
 and anger management classes.  Parents agreed
 to comply with the placement plan and were notified their failure to accomplish
 the plans objectives within the specified time frame could result in the loss
 of their parental rights.[2]  
 
On May 29, 2003, after Child resided in foster care for one year, the
 family court conducted a permanency planning hearing to review the progress of Parents. 
 The family court found the following: (1) Mother had recently tested positive
 for illegal substance abuse; (2) Father had failed to comply with the placement
 plan; and (3) Parents were in arrears on their child support payments.  
Based on these findings, the family court accepted DSSs recommendation
 that custody of Child be granted to Aunt and Uncle.[3]  Under a consent order filed May 29,
 2003, the family court awarded legal and physical custody of Child to Aunt and
 Uncle, granted Parents supervised visits with Child, and ordered Parents to pay
 past-due child support.  The family courts order stated reunification of Child
 with Parents was no longer a goal.  The family court informed Parents they must
 successfully complete the original, court-approved placement plan before
 petitioning the family court for Childs return.  Because Child had been
 successfully placed with relatives, DSS closed the case; however, DSS retained a
 right to intervene in the future.  
During the next twelve months, Mother and Father divorced, Father
 was incarcerated in federal prison, and Mother was arrested for public
 intoxication and reckless driving.  In July 2004, Aunt and Uncle filed a petition
 seeking termination of Parents parental rights.[4] 
 Aunt and Uncle additionally requested the suspension of Mothers visitation
 privileges should the family court decline to terminate her parental rights. Subsequent
 to the filing of the petition, Mother was indicted and pled guilty to charges
 of possession of cocaine.    
A termination of parental rights (TPR) hearing was conducted on June
 27 and 30, 2006.  Aunt and Uncle testified Child had lived with them for the
 past three years, and they hoped to adopt Child following the termination of Parents
 parental rights.  No petition for adoption had been filed prior to the TPR
 hearing.  Childs GAL, Gregory Harlow (Harlow), testified Mother had not
 responded to his attempts to contact her.  Harlow stated termination of
 Mothers and Fathers parental rights was in Childs best interest.  However, the
 family court found Aunt and Uncle failed to prove a statutory ground for the
 termination of Parents parental rights by clear and convincing evidence and
 denied Aunt and Uncles petition.  The family court also granted Mother additional
 and more extensive visitation with Child and ordered Aunt and Uncle to pay
 Fathers and Childs GAL fees.  The family court subsequently denied Aunt and
 Uncles post-judgment motion to amend findings of fact and conclusions of law.  This appeal follows. 
 
STANDARD OF REVIEW
The
 grounds for TPR must be proven by clear and convincing evidence.  S.C. Dept
 of Soc. Servs. v. Parker, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).  Upon review, the appellate court may make its own finding from the record
 as to whether clear and convincing evidence supports the termination [of
 parental rights].  S.C. Dept of Soc. Servs. v. Headden, 354 S.C. 602, 609,
 582 S.E.2d 419, 423 (2003).  
On
 appeal from the family court, this [C]ourt has jurisdiction to correct errors
 of law and find facts in accordance with its own view of the preponderance of
 the evidence.  Henggeler v. Hanson, 333 S.C. 598, 601, 510 S.E.2d 722,
 724 (Ct. App. 1998).  A preponderance of the evidence stated in simple
 language, is that evidence which convinces as to its truth.  Frazier v.
 Frazier, 228 S.C. 149, 168, 89 S.E.2d 225, 235 (1955) (internal quotations
 omitted). Despite this broad scope of review, this Court is not required to
 disregard the family courts findings.  Doe v. Roe, 369 S.C. 351, 359,
 631 S.E.2d 317, 321 (Ct. App. 2006).  This Court remains mindful the family
 court saw and heard the witnesses, placing it in a better position to evaluate
 the credibility and assign comparative weight to each witness testimony.  Id.  
 
LAW/ANALYSIS
I.  Statutory Grounds for TPR
Aunt
 and Uncle first argue the family court erred in finding there was insufficient evidence to support a statutory
 ground for termination of Parents parental rights.  We disagree in regards to Mothers parental rights but
 agree in regards to Fathers parental rights.
The
 procedures for TPR are governed by statute.  See S.C. Code Ann. §§ 20-7-1560
 to -1582 (Supp. 2007).  The family court may order TPR upon a finding of one or
 more of the eleven statutory grounds listed in the TPR statute and upon a
 finding that termination is in the best interest of the child.  S.C. Code Ann. §
 20-7-1572.  Therefore,  

 to
 terminate parental rights under section 20-7-1572, the family court must first
 find at least one of the statutory grounds set forth in that section.  If the
 family court finds that a statutory ground for termination has been proven, it
 must then find that the best interests of the child would be served by
 termination.  

Doe v. Baby Boy Roe, 353 S.C. 576, 580, 578 S.E.2d 733, 735 (Ct. App.
 2003).  

 a.     Termination of Mothers
 Parental Rights
 
 i.      Mothers Failure to Make
 Home Safe and Mothers Failure to Remedy Conditions
 

We
 begin by noting a discrepancy between the family court record and the arguments
 raised on appeal.  In the family court, Aunt and Uncle argued Mothers parental
 rights should be terminated pursuant to section 20-7-1572(1), which allows for
 TPR upon a showing that it is not likely the parent could make his or her home
 safe for the child within twelve months.  Mother made a motion for a directed
 verdict[5] on this ground, and the family court judge granted the motion, finding Aunt and
 Uncle presented insufficient evidence to support their argument.  Aunt and
 Uncle failed to appeal this ruling; instead they argue a different statutory
 ground in their appeal.   
The
 Court of Appeals [has] properly concluded procedural rules are subservient to
 the [C]ourts duty to zealously guard the rights of minors, making it proper
 for this Court to address issues raised for the first time on appeal if those
 issues concern a minor.  Joiner ex rel. Rivas v. Rivas, 342 S.C.
 102, 107, 536 S.E.2d 372, 374 (2000).  However, due process prohibits the
 termination of parental rights on a ground for which the parent did not receive
 notice.  Greenville County Dept of Soc. Servs. v. Bowes,
 313 S.C. 188, 195, 437 S.E.2d 107, 111 (1993), superseded by statute,
 S.C. Code Ann. § 20-7-1572, as recognized in Hooper v. Rockwell,
 334 S.C. 281, 296 n.6, 513 S.E.2d 358, 366 n.6 (1999) (recognizing a family
 court must, in addition to finding a statutory ground for TPR has been proven
 by clear and convincing evidence, make the additional finding that termination
 is in the best interest of the child).  
Aunt
 and Uncles failure to raise section 20-7-1572(1) in their appeal resulted in
 Mother having no notice that her parental rights could be terminated pursuant
 to that statutory ground.  The issues on appeal failed to advise Mother she
 would be called upon to address the possible applicability of section
 20-7-1572(1), and therefore, she was deprived of an opportunity to rebut any
 allegations concerning this statutory ground.  Therefore, due process prevents
 us from terminating Mothers parental rights pursuant to section 20-7-1572(1).  Id.  See also Blanton v. Stathos, 351 S.C. 534, 542, 570
 S.E.2d 565, 569 (Ct. App. 2002) (Procedural due process mandates that a
 litigant be placed on notice of the issues which the court is to consider.); Corley v. Centennial Constr. Co., 247 S.C. 179, 187, 146 S.E.2d 609, 613
 (1966) (The object of pleading is to advise the parties of the issues they
 will be called upon to meet.).  Accordingly, we follow the appellate
 procedural rules and deem the issue to be abandoned on appeal.  Rule
 208(b)(1)(B), SCACR.  See Hampton v. Dodson, 240 S.C. 532, 539,
 126 S.E.2d 564, 567 (1962) (finding issues were deemed abandoned when party
 failed to argue the issues in their brief).  Thus, we affirm the family court
 and do not terminate Mothers parental rights pursuant to section
 20-7-1572(1).        
As
 previously stated, Aunt and Uncles appeal presents an entirely different
 statutory ground as a basis for terminating Mothers parental rights.  Aunt and
 Uncle claim Mothers parental rights should be terminated based on section
 20-7-1572(2), which allows for TPR when more than six months have passed since
 the childs removal from the parents home, and the parent has failed to remedy
 the condition which led to the childs removal.  This statutory ground was
 never pled or raised by Aunt and Uncle as a reason for terminating Mothers
 parental rights; rather, Aunt and Uncle raised this ground solely as a basis
 for terminating Fathers parental rights.  Having never been raised, the family
 court did not have an opportunity to rule on this issue as a ground for
 terminating Mothers parental rights.  Thus, under the standard appellate court
 rules, it would be improper for this Court to consider whether section
 20-7-1572(2) may be employed to terminate Mothers parental rights.  See Rule 210(c), SCACR (The Record [on Appeal] shall not . . . include matter
 which was not presented to the lower court or tribunal.).  See also Elam
 v. S.C. Dept of Transp., 361 S.C. 9, 23, 602 S.E.2d 772, 779-80 (2004)
 (Issues and arguments are preserved for appellate review only when they are
 raised to and ruled on by the lower court.).       
Additionally,
 Mother was never given notice her parental rights might be terminated pursuant
 to section 20-7-1572(2) because this issue was never raised to the family
 court.[6] 
 Once again, due process prohibits us from using this statutory ground as a
 means of terminating Mothers parental rights.  Bowes, 313 S.C. at 195,
 437 S.E.2d at 111.  See also Blanton, 351 S.C. at 542, 570 S.E.2d
 at 569 (The Due Process Clause demands notice reasonably calculated under all
 circumstances to apprise interested parties of the pendency of the action and
 afford them an opportunity to present their objections.); 21 S.C. Jur. Children
 and Families § 46 (2007) (stating TPR cannot be granted on a ground not
 raised in pleadings or otherwise to the family court).    

 
 ii.      Mothers Failure to Visit
 

Aunt
 and Uncle continue their argument for the termination of Mothers parental
 rights based on section 20-7-1572(3), claiming Child has lived outside of
 Mothers home for more than six months and Mother has willfully failed to visit
 Child.  Aunt and Uncle state the record contains clear and convincing evidence
 to support Mothers willful failure to visit Child.  We disagree.      

 Section
 20-7-1572(3) provides for the termination of parental rights if
 [t]he
 child has lived outside the home of either parent for a period of six months,
 and during that time the parent has wilfully failed to visit the child.  The
 court may attach little or no weight to incidental visitations, but it must be
 shown that the parent was not prevented from visiting by the party having
 custody or by court order.

Whether a parents failure to
 visit is willful is a question of intent to be determined from the facts and
 circumstances of each individual case.  S.C. Dept Soc. Servs. v. Broome, 307 S.C. 48, 52, 413 S.E.2d 835, 838 (1992).
Child has lived
 outside of Mothers home for more than six months, and Mother has not visited
 Child in over two years.  The issue, however, is whether this failure to visit
 was willful when evidence indicates that Aunt and Uncle frustrated Mothers
 attempts to visit Child.  
Aunt and Uncle presented
 evidence indicating when Child was in DSS custody, Mother missed almost no
 scheduled visitations with Child despite transportation problems she faced. 
 Additional testimony was presented which showed that although Mother was well-educated, she did not
 object to or request a change in visitation arrangements by contacting DSS, the
 attorneys who represented her during her divorce, or Childs GAL.  Aunt and
 Uncle argue these facts provide evidence that Mothers recent failure to visit
 was willful.  
Mother, however, presented conflicting testimony regarding the
 reasons she failed to regularly visit Child after Aunt and Uncle were granted
 custody.  Mother alleged her efforts to
 visit Child were thwarted by Aunt and Uncle.  Mother testified Aunt refused to
 let Mother have anyone accompany her to the visitations despite Mother
 requiring transportation from family or friends in order to make it to the
 visitations.  Mother also stated Aunt and Uncle scheduled visits only in the
 middle of work days, which made the visitations more difficult to attend. 
 Further, Mother said Aunt told her not to call Aunt and Uncles home or she
 would be arrested for harassment.    Finally, Aunt contacted law enforcement to
 inform them about Mothers whereabouts which led to Mothers arrest at a
 visitation for a missed child support payment.    
At
 the end of all the testimony, the family court noted there was evidence to
 suggest Aunt and Uncle in some ways tried to discourage visitation between
 Mother and Child, while also recognizing Mother had not done all she could have
 to assert her visitation rights.  The family court additionally stated although
 parties may believe very strongly in their positions, when parties try a case, the
 evidence presented in the courtroom is what matters and not what the parties
 know in their hearts.  We recognize that much of the findings the family court
 made in this case had to be determined from its observations of the witnesses
 and the credibility it accorded them, and we, therefore, give deference to those
 findings.  See Roe, 369 S.C. at 359, 631 S.E.2d at 321 (stating
 the appellate courts must not ignore the fact that the trial judge saw and
 heard the witnesses and was in a better position to evaluate their credibility
 and assign comparative weight to their testimony).
We
 find the record contains evidence which supports Mothers claim that her
 efforts to visit Child were frustrated by Aunt and Uncle.  With no clear and
 convincing evidence showing Mother willfully failed to visit Child, Mothers
 parental rights will not be terminated pursuant to section 20-7-1572(3).  
 

 b. Termination of Fathers
 Parental Rights
 
 i. Fathers Failure to Remedy
 Conditions
 

Aunt
 and Uncle begin their argument for the termination of Fathers parental rights
 based on section 20-7-1572(2), arguing Father has failed to remedy the
 conditions which led to Childs removal from Parents home more than six months
 ago.  Aunt and Uncle argue the record contains clear and convincing evidence to
 support this claim.  We agree.  
Parents
 positive drug tests and failure to comply with the DSS safety plan were the
 conditions which led to Childs removal from Parents home.  In the family
 courts order finding the evidence was insufficient to support a statutory ground
 for TPR, the court stated: There is no showing that [Father] continues to use
 drugs or alcohol while incarcerated.  There is no showing as to whether or not
 [F]ather has had any opportunity to remedy the conditions leading to the
 removal of the child.    
As previously stated, section 20-7-1572(2) allows for a parents
 rights to be terminated if six months have passed since the childs removal
 from the parents home and the parent has failed to remedy the condition which
 led to that removal.  TPR based on the statutory ground of failure to remedy
 conditions does not suggest that an attempt to remedy alone is adequate
 to preserve parental rights.  Otherwise, the statute would be couched in such
 terms.  The attempt must have, in fact, remedied the conditions.  Dept of
 Soc. Servs. v. Phillips, 365 S.C. 572, 579, 618 S.E.2d 922, 925 (Ct. App.
 2005) (emphasis in original) (citation omitted).  Furthermore, the statute makes no mention of a parent having an
 opportunity to remedy the condition; the statute simply focuses on whether the
 condition has in fact been remedied by the parent.  See S.C. Code Ann. §
 20-7-1572(2) (stating a ground for termination is found if child has been
 removed from the parent . . . , has been out of the home for a period of six
 months . . . , and the parent has not remedied the conditions which caused the
 removal).  Evidence presented failed to show Father had remedied the
 conditions which caused Childs removal.   
When
 the TPR hearing was held, Father was in federal prison following a conviction
 for being a felon in possession of a firearm[7] in January 2004.  Although absent from the hearing, Father was represented by
 an attorney and had a GAL appointed to represent his interests.  At the
 hearing, Aunt and Uncle presented evidence which indicated Father continued to
 abuse drugs up to the time of his incarceration.  The family courts consent
 order from the permanency planning hearing indicated Father refused to participate in drug
 screenings, assessment, and counseling ordered by the family court.  Additionally,
 Aunt and Uncle presented letters from Father to Aunt as recently as April 2006
 where he admitted feeling so much better that [he was] not doped up every 10
 minutes.  The only evidence presented in
 Fathers favor was his GALs
 testimony that Father was attempting to obtain drug treatment in prison in
 order to get his sentence reduced.    
After a review of the record, we reverse the family court and find
 clear and convincing evidence to support the termination of Fathers parental
 rights pursuant to section 20-7-1572(2).   

 
 ii.      Fathers Willful Failure to
 Visit
 

Aunt
 and Uncle next argue Fathers parental rights should be terminated due to
 Fathers willful failure to visit Child pursuant to section 20-7-1572(3).  Aunt
 and Uncle claim the record provides clear and convincing evidence of Fathers
 willful failure to visit.  We agree.   
Parental
 rights may be terminated for a parents willful failure to visit a child who
 has been removed from the parents home for more than six months, but it must be
 shown the parent was not prevented from visiting the child.  S.C. Code Ann. §
 20-7-1572(3).  The willfulness of a parents failure to visit will be a
 fact-specific inquiry, but it is well established that a parents incarceration
 alone is not sufficient to establish a willful failure to visit.  S.C. Dept
 of Soc. Servs. v. Wilson, 344 S.C. 332, 340, 543 S.E.2d 580, 584 (Ct. App.
 2001).  While a parents voluntary pursuit of lawless behavior may be
 considered by the family court, [t]erminating the parental rights of an
 incarcerated parent requires consideration of all of the surrounding facts and
 circumstances in the determination of wilfulness.  Id.       
Father
 failed to visit Child regularly during the thirteen months she was in foster
 care, and he had no contact with her during a seven-month interval prior to his
 incarceration.  When asked if it was fair to say Father did not have much of a
 relationship with Child prior to his incarceration, Fathers GAL responded: I
 think thats probably fair to say.  Accordingly, Fathers incarceration since January 2004
 does not explain his failure to visit Child for the seven months that preceded
 his incarceration or his failure to attempt contact during the thirteen months
 Child was in foster care.  
These facts and circumstances, in addition to Fathers deliberate
 choice to engage in behavior which would result in his incarceration,
 demonstrate Fathers willful failure to visit Child.  We find clear and
 convincing evidence supports termination of Fathers parental rights on the
 statutory ground of his willful failure to visit Child, and therefore, we
 reverse the family court on this issue.   

 
 iii.  Fathers Willful Failure to
 Support
 

Finally,
 Aunt and Uncle argue Fathers parental rights should be terminated for Fathers
 willful failure to support Child when Child has been outside of Fathers home
 for more than six months.  S.C. Code Ann. § 20-7-1572(4).  We find this issue
 is not preserved for our review.  
In
 their complaint, Aunt and Uncle sought to terminate Fathers parental rights
 based on his willful failure to support Child.  The family court, however, made
 no finding regarding this issue.  Following the family courts ruling, Aunt and
 Uncle made a post-judgment motion to amend findings of fact and conclusions of
 law and/or to make new findings and conclusions, but they never requested the
 family court to rule on Fathers willful failure to support Child.  Post-trial
 motions to amend or modify judgment are necessary to preserve issues that have
 been raised to the trial court but not ruled upon.  Sims v. Hall, 357
 S.C. 288, 299, 592 S.E.2d 315, 321 (Ct. App. 2003).  Accordingly, the issue of
 whether Father willfully failed to support Child is not properly before this
 Court.    
II.  Best Interest of Child
As
 previously stated, parental rights may only be terminated upon a finding of at
 least one of the statutory grounds listed in section 20-7-1572 and a finding
 that termination is in the childs best interest.  Baby Boy Roe, 353
 S.C. at 580, 578 S.E.2d at 735.    
Aunt
 and Uncle provided insufficient evidence to terminate Mothers parental rights
 under section 20-7-1572 of South Carolinas TPR Statute.  Finding Aunt and
 Uncle failed to establish any statutory ground for the termination of Mothers
 parental rights, we do not reach the issue of whether termination of Mothers
 parental rights is in Childs best interest.  See id. (stating
 only after a statutory ground for termination of parental rights has been found
 must the family court question whether termination is in the childs best
 interest).    
Aunt and Uncle, however, did provide clear and convincing evidence
 to support the termination of Fathers parental rights pursuant to sections
 20-7-1572(2) and (3), and therefore, we must consider whether the termination
 of his parental rights is in Childs best interest.  See id. (stating parental rights may be terminated upon a finding of at least one
 statutory ground and a finding that termination is in the childs best
 interest).  The family court never reached this issue.  We, therefore, remand
 the issue to the family court to take any additional testimony if necessary to
 make a determination of whether Childs best interests are served by terminating
 Fathers parental rights and to set forth its findings with particularity.         
III.  Grant of Visitation to
 Mother
Aunt and Uncle argue the family court erred in ordering additional
 and more extensive visitation between Mother and Child.  We agree in part.  
 
As discussed above, the record contains sufficient evidence to
 indicate Aunt and Uncle have frustrated Mothers right to visit Child.  Therefore,
 the family court was correct to award Mother greater access to Child, and thus,
 we affirm in part the order of visitation.  
The record, however, does not contain testimony or other
 sufficient evidence on which to base a determination about a visitation
 schedule that would be in Childs best interest.  There was no discussion about
 the appropriate amount of visitation Mother should be granted, the length of
 time these visitations should last, and whether these visitations should be
 supervised, and if so, by whom.  A thorough investigation should be conducted
 by a GAL to establish an appropriate visitation schedule for Mother, which
 should also include regular drug testing of Mother.  
Due to the lack of evidence regarding a visitation schedule that
 would be in Childs best interest, we reverse the visitation schedule ordered
 by the family court and remand the issue to the family court to determine an
 appropriate, structured, and gradual visitation schedule.        
IV. Award of GAL Fees
Aunt and Uncle argue the family court
 erred by ordering them to pay Fathers and Childs GAL fees of $5,817.50.  We disagree.  
Aunt and Uncle failed to provide any authority in support of their
 argument, making it a conclusory argument, and an issue which is not supported by authority is deemed abandoned on
 appeal.  See Mulherin-Howell v. Cobb, 362 S.C. 588, 600, 608
 S.E.2d 587, 593-94 (Ct. App. 2005) (finding party abandoned an issue due to
 failure to cite any supporting authority and making only conclusory
 statements).  We add that the award of GAL fees lies within the sound
 discretion of the family court judge and will not be disturbed on appeal,
 absent an abuse of discretion.  Shirley v. Shirley, 342 S.C. 324,
 341, 536 S.E.2d 427, 436 (Ct. App. 2000).  Because Aunt and Uncles argument is
 conclusory and we find no abuse of discretion, we affirm the family courts
 order regarding GAL fees. 
CONCLUSION
For
 the foregoing reasons, we affirm the family courts finding that clear and
 convincing evidence does not support the termination of Mothers parental
 rights pursuant to section 20-7-1572.  Furthermore, we reverse the family
 courts findings that clear and convincing evidence does not support the
 termination of Fathers parental rights pursuant to sections 20-7-1572(2) and
 (3).  Additionally, we remand the issue of whether termination of Fathers
 parental rights is in Childs best interest.  We also affirm the family courts
 grant of increased visitation to Mother, but we reverse the ordered visitation
 schedule.  We remand this issue to the family court to modify the visitation
 schedule pursuant to this opinion.  Finally, we affirm the family courts award
 of GAL fees.  
Accordingly,
 the family courts decision is
AFFIRMED
 IN PART, REVERSED IN PART, AND REMANDED.
WILLIAMS
 and PIEPER, JJ., and CURETON, A.J., concur.   

[1] The names of the parties and the minor child have
 been changed to protect the minor childs identity.   
[2] The placement plan also included a visitation
 contract, which stated Parents were to attend bi-weekly supervised visits with
 Child and failure to comply with the visitation schedule could affect their
 parental rights.  
[3] On
 May 5, 2003, DSS transferred Child out of foster care and placed her with Aunt,
 who is Fathers half-sister, and Uncle.  Aunt and Uncle have been married for twenty-one years and have no other children.   Uncle has worked at Kimberly-Clark for the past
 fourteen years, and Aunt does not work outside the home.  
[4] Aunt and Uncles complaint sought
 termination of Mothers parental rights based upon it being reasonably unlikely
 Mother could make her home safe for Child within twelve months, Mothers
 failure to consistently visit Child, and Mothers failure to consistently pay
 child support.  Aunt and Uncles complaint sought termination of Fathers
 parental rights based upon his failure to visit, failure to pay child support,
 failure to remedy the condition which made removal of the minor child necessary[,]
 and failure to keep his home safe for his daughter within . . . twelve (12)
 months. 
[5] We note, Rule 2(a), SCRFC, specifically excludes
 Rule 50, SCRCP (directed verdict motions), from family court proceedings.  Owens
 v. Owens, 320 S.C. 543, 544 n.1, 466 S.E.2d 373, 374 n.1 (Ct. App. 1996). 
 Therefore, Mothers motion was at most a motion for involuntary nonsuit
 pursuant to Rule 41(b), SCRCP, which is not excluded by Rule 2(a), SCRFC.  See id. (finding the partys motion for a directed verdict in family court
 was at most an involuntary nonsuit motion).  
[6] We recognize an issue may be tried by consent despite
 a party failing to raise the issue in the pleadings.  See Rule 15(b),
 SCRCP (When issues not raised by the pleadings are tried by express or implied
 consent of the parties, they shall be treated in all respects as if they had
 been raised in the pleadings.).  However, we cannot conclude the parties tried
 a completely separate ground for termination in this case.  The family court
 record provides no evidence which would indicate the parties believed the
 family court was considering section 20-7-1572(2) as a ground for terminating
 Mothers parental rights.  
[7] 18 U.S.C.A. § 922(g)(1) (West 2008).